Good morning, Your Honors, and may it please the Court, Kimberly Trimble on behalf of Mr. Jauregui. Mr. Jauregui agreed to import marijuana. That conviction carries a five-year statutory maximum, and nothing that Mr. Jauregui said at the change of plea colloquy could enhance that statutory maximum. That's because this Court has a two-step test to determine what type of drugs a defendant is liable for. The government omits the first part of this test, and the first part of that test is critical. It determines the total universe of the drugs that a person could possibly be punished for. So that's why in Vanuelos this Court says that two findings are necessary to increase the statutory maximum. I mean, just to get one thing out of the way right up front, he was not indicted by a grand jury for conspiracy to import a Schedule I controlled substance. He was indicted for a Schedule II, the meth, correct? Correct, and the government concedes that that's irrelevant to this question. And if you were right that there was a bad allocution to conspiracy to distribute meth, if you were right about that, wouldn't the remedy be to vacate the judgment of conviction and say there was not a valid plea? Because otherwise you would have a constructive amendment of the indictment. No, Your Honor, for two reasons. First of all, because I am not challenging the conviction. I am only challenging the sentence. This was a valid conviction and a valid change of plea colloquy to the importation to import a controlled substance. How can a judge sentence a defendant for a crime they didn't commit? Wouldn't that be plain error? No, Your Honor, when it comes to drug conspiracies, the conviction can be based on an admission to import a controlled substance. There then needs to be an admission of the specific type of drug. Without that admission, the statutory maximum would only be one year. Mr. Howardy, in fact, did admit to marijuana, so it was increased to five years. It would not be plain error to sentence a person for a crime that is not included in the grand jury's indictment? Well, Your Honor, that crime is included in the grand jury's indictment. Well, the grand jury indicted for conspiracy to distribute a Schedule II controlled substance, methamphetamine. Respectfully, Your Honor. They never charged a Schedule I drug, which is marijuana. Two points, Your Honor. Respectfully, the government concedes that what's alleged in the indictment as to drug type is irrelevant, and that's because of this Court's previous decisions in Casares in particular. Facts that are not necessary to sustain a conviction that are alleged in the indictment and not admitted at the change of plea colloquy are not impliedly admitted by the guilty plea itself. So here it is an absolutely valid conviction for the importation of controlled substances. It has an additional admission for marijuana, which raises the statutory maximum, and that conviction itself is not challenged at all. It is absolutely true that the indictment specified methamphetamine, but that was a factual allegation that was never admitted to and not necessary to make this conviction valid. So what we look at under Bun-Whalo's about the drugs attributable to a defendant based on a guilty plea is, quote, not only that the court must find not only that the conspiracy involved a particular type and quantity of drugs, but also that that type and quantity were either within the scope of an agreement or the type and quantity were reasonably foreseeable to the defendant. So the government skips that first admission that's necessary, which is that the conspiracy as a whole actually involved methamphetamine. They skip directly to the second part, and this Court's decision in Torres. Your brief's very confusing on that, too, because you seem to be skipping around also. Okay, Your Honor, I'll try to break it down more clearly here. And actually, I think the Court's decision in Torres this past September is particularly helpful for understanding this two-step test. This test about reasonable foreseeability, as explained in Torres, is meant to determine what drugs other people were involved in that you can nonetheless be punished for. So the drugs that your co-conspirators. Is the point that he didn't agree to a conspiracy with methamphetamine or there wasn't a conspiracy with regard to methamphetamine? It's both, Your Honor. He factually agreed to a conspiracy with marijuana and was not involved with a conspiracy to import methamphetamine. There was never an agreement. He not only agreed to a conspiracy to import marijuana, he agreed that there could be methamphetamine. Actually, Your Honor, he agreed that retrospectively, it was reasonably foreseeable that the substance could have been swallowed. But in terms of the evidence of record, he went to Victor the day of the importation into the United States, and he purchased meth from Victor. He knew Victor was in the business of selling meth. Correct? Respectfully, Your Honor, that's not in the terms of plea colloquy. That's extra record facts which can be considered as sentencing within the statutory maximum, but the government concedes in footnote one that the only facts relevant to this question are those admitted at the change of plea colloquy. So what was wrong with his admission that it could be reasonably foreseeable that the drugs were meth? There's something wrong with it, but there's two necessary facts that he needed to admit, and he did not admit to the first necessary fact that there was actually any meth. But, you see, that's when you start confusing me. The question isn't whether there was actually any meth. The question is, as you stated the first time, as I understand it, whether there was a conspiracy, whether he was part of a conspiracy. I mean, this is a mind question, as I understand it, not a fact question of what's happening on the ground necessarily, although what's happening on the ground could influence what you think is in his mind. The question is, what did he agree to? Is that your argument, or is your argument whether there was actually any ‑‑ he actually knew there was any meth? What is your argument? No, Your Honor, you're correct. And it's perhaps unartful when I'm saying whether there's actually meth. What I mean to encompass by that is whether any of his co‑conspirators actually agreed to import meth or actually imported meth. But then you're changing the focus again. Is the question what he agreed to or what they ‑‑ I mean, as it turned out, there was a bunch of meth in the car he was driving. Unless you think just one person put it there, it appears that there was probably a conspiracy by somebody to put meth in the car. Okay. So the question seems to be whether he was part of that conspiracy. Is that the question? Yes, Your Honor. Okay. And that's exactly why this is significant here. If you look ‑‑ if we want to look at the totality of the facts and why the case resolved in the way that it did, only a few days prior to trial, it's because Mr. Howergy consistently maintained that he agreed to import marijuana but withdrew from the conspiracy. And then everything that happened after that was not a part of the conspiracy that he was a part of. And so that's why this methamphetamine that was seized, that's not his conspiracy. Certainly, Your Honor is correct. Somebody put it in there and potentially more than one person. So perhaps there was a conspiracy to import methamphetamine, but it was separate and distinct from the agreement that Mr. Howergy had entered and withdrawn from. And that's why this is particularly significant here. The government ‑‑ Well, you're not urging withdrawal before us. Well, Your Honor, I am explaining withdrawal because that was the potential defense that Mr. Howergy had to the importation of methamphetamine, which the government decided not to try to prove at trial. That is why this agreement was reached. The government ‑‑ Well, if his statement was true, then he also withdrew from a marijuana conspiracy as well. It has to be. That's true, Your Honor. However, under federal law, even if he withdrew, he was liable for the conspiracy that he entered. He just wasn't liable for any post‑withdrawal acts of his co‑conspirators. So did he, at the plea colloquy, did he continue to maintain that he drove the truck thinking there was nothing in it, as opposed to he drove the truck as part of this marijuana conspiracy, but then it turned out there was meth? Your Honor, actually, he didn't admit that he drove the truck at the change of plea colloquy. At the sentencing, he maintained that he did not know there was anything in the truck. But the important thing is at the change of plea colloquy, there was never even an admission that he drove the truck or that anything was in it. And that's what's really significant here. If you look at the context of why this case resolved, Mr. Howergy was always willing to admit that he had agreed to import marijuana. He was never willing to admit that he was responsible for the methamphetamine in the car. And that is why when he admitted his guilt at the change of plea hearing,  about whether he was admitting to Juul knowledge, and the attorney specifically says no. What do you mean, to Juul knowledge? So Juul is deliberate ignorance, where he suspected there was something in the car, but he deliberately did not investigate. He explicitly says that he is not admitting to Juul knowledge. He's not admitting to anything in the car. The reason the statement about reasonable foreseeability was made was because of Pinkerton. But Pinkerton goes to the, over at Axe. Well, Pinkerton goes to whether you can be convicted of the substantive crimes that your co-conspirators did. Right, right, right. Exactly, which is why it's. But he wasn't convicted of any substantive. Precisely, Your Honor. So everybody was mixed up, is what you're saying? No, Your Honor. That's precisely why that admission was made, but did not raise the statutory maximum. Well, it was made thinking it was accomplishing something, but it wasn't. Well, no, Your Honor. It was accomplishing something. Fine. If you look at the change of plea colloquy, the government says that they intended to argue for sentencing guidelines purposes, that the reasonable foreseeability of the methamphetamine could be part of Mr. Howard's. Because he would then have a related act for the substantive crime. Potentially. And remember, the standard of proof for sentencing guidelines is lower, and so it was clear at the change of plea colloquy that the government intended to argue sentencing  guidelines based on marijuana, which we ultimately didn't. But on your theory, they couldn't have argued the sentencing guidelines for methamphetamine based on the Pinkerton notion. I think they potentially could have for relevant conduct. It wouldn't have raised the statutory maximum, but they could have potentially argued, as the district court ultimately found, that Mr. Howard, he did have at least dual knowledge. Actually, the government didn't even argue that by the time sentencing came around. The government agreed that it was only a retrospective understanding. Well, then what do you say retrospective understanding? It had to have been reasonably foreseeable to the defendant. And it was asked. So it was reasonably foreseeable that it, meaning the drug, could be swapped with a different substance. And the court asked the defendant, is that indeed what you thought, Mr. Howard, that you were importing? The defendant says yes. And do you agree it was reasonably foreseeable, given the nature of the conspiracy and the manner in which you were agreeing to import, that it could have been methamphetamine? And the defendant says yes. That's not about Pinkerton liability. That's about an actual admission on the record by the defendant. I disagree, Your Honor, because he never admitted there was any methamphetamine. And I think what's particularly revealing. Well, let me ask you a question about that. It is significant that the PSR identifies that there's meth, right? Yes, Your Honor. Nobody ever objects to that. Well, no, Your Honor. At the sentencing hearing, there is a dispute as to whether he knew about that methamphetamine. Well, it's right in the PSR. There's an identification of the amount of meth. I'm sorry, Your Honor. To be clear, nobody ever contested that there was meth found. Okay. He did contest that he knew that there was meth. Well, he contests a minor role as to the PSR. In fact, he objects, saying he had a minor role. But he doesn't object about the PSR identifying a quantity of meth. Well, Your Honor. And frankly, he crosses the border with drugs in his car. The indictment was all about meth, and then he doesn't object to the PSR identifying meth as a part of the crime. Two responses, Your Honor. First, the government agrees that the indictment and the drugs seized at the border are legally irrelevant for this inquiry. Second, Mr. Howardy did not contest at sentencing that meth was actually seized. He did contest that that meth was attributable to him. And so the fact of meth being seized is not on its own enough for it to be legally attributable to him. He has to have, that has to have been a part of his conspiracy. Well, it seems to me if one's going to object about minor role or challenging minor role, one should at least think about, hey, that PSR on which the district court is about to rely says there's a quantity of meth involved in this transaction on which he can be sentenced. Your Honor, the PSR identifies that meth was seized. It does not say that Mr. Howardy knew that there was meth. So I think PSR objections are typically to object to the facts alleged therein. The fact that meth was seized is true. I'm losing a thread here. What does this go to? At the time of the plea colloquy, there was no PSR, right? Exactly, Your Honor. And the government conceded that those are the only relevant facts. And to the extent that it would help your… That was your first answer, not you were going to argue it. Well, I tried, Your Honor. I was trying. All I was trying to do was get you some perspective. Well, Your Honor, perhaps the most perspective I can offer, Your Honors, and to be clear, it's not a part of the record, but there is an email exchange between the prosecutor and defense attorney that I can supply to the court. And the contents of that, if you'd like me to quote it, the AUSA specifically asks… You probably shouldn't. Okay, Your Honor. It's not in the record. I don't think you really should. That's why I think it shows what Mr. Howardy was not willing to admit to, the same way that he didn't actually admit that methamphetamine existed. I think that this plea colloquy, the exchange about what was going to be admitted supports the conclusion that Mr. Howardy was going to tell. Okay, you're way, way over your time. My apologies. So thank you for your argument. Thank you, Your Honor, and may it please the court. Mark Ray for the United States. I think there's a lot of confusion here. I'm going to try to bring some clarity. Okay, go ahead. Try. I may not be lucky enough, but I think where my opponent goes wrong is by characterizing this from the get-go as just being an agreement to import marijuana. It excerpt of records… Well, it's not a question of characterizing. She's saying that's all he agreed to. That's all he ever agreed to in the plea colloquy. But in excerpt of record 77, that's not true. This is Ms. Trimble's own statements. Beginning on a date unknown and continuing up to January 31, 2016, the defendant was in agreement with at least two other persons to commit a crime of importing a Schedule I or Schedule II controlled substance under Federal law. Right. And as the judge said right afterwards, well, that's not very useful because it's one or the other. We have to have one. Well, that was Judge Schoenwald's confusion, but I don't think… Why is it confusion? I mean, if it's one or the other, then it's not two. It's one or the other. I think you could have an agreement to do one or the other. And, in fact, on excerpt of 78, the defense counsel says the same thing. It would be a different situation. Well, first of all, whatever the defense counsel said, it isn't what he said. Well, he later, when he's asked, I mean, I don't know about that, Your Honor. Remember, this is plain error review, too. There was never a single mention about that by my opponent during her entire presentation. I think with that said, this Court looks at the record a little more favorably. She speaks for her client. Let's back up a minute. Yeah. Do you agree that, I mean, because, as I said to your opponent, I'm saying to you, the briefs were so all over the place that I couldn't really figure out what anybody was arguing. Is – do you agree that he needs – we need to be able to get from the plea colloquy in admission to a participation in an agreement or a conspiracy to import methamphetamine? Yes, Your Honor. And it isn't good enough that he could foresee that, although he only agreed to import marijuana, somebody might have put methamphetamine in it. If that was all he agreed to do, but he did not – he never would have said it. All right. So if that's all he agreed to, that's not good enough. So what war is there? Well, because he didn't just get up at the plea colloquy and say, I only agreed to import methamphetamine. His attorney said not once but twice, excerpt of records 77 and 78, this was an agreement for marijuana or methamphetamine. That, to me, says it's more than just the one. And beyond that, even in excerpt of record 79, this was the court specifically asking the defendant, do you agree it was reasonably foreseeable given the nature of the conspiracy and the manner in which you were agreeing to import that it could have been methamphetamine? The defendant says yes. In United States v. Banuelos, this Court held that to subject a defendant to an increased sentence under Apprendi. So let me back up a minute. You think because he said, when Ms. Trimble said there was an agreement between two or more persons to commit the crime of importing methamphetamine and some other prohibited drug, Mr. Wawrighi became a member knowing of its object to import methamphetamine or some other prohibited drug. And the defendant essentially says yes, that that's sufficient and what else happened doesn't matter. Well, not so much what else happened doesn't matter, but I certainly think that's critical. And given that this is plain error review, this Court in United States v. Buckland en banc over 16 years ago held under Apprendi you can look to more than just what happens at the guilty plea colloquy. In that case, there were admissions by defense counsel in a sentencing pleading that supplied the necessary facts for increase in the weight. This Court held under the third prong of plain error review that that cured any Apprendi issues. In United States v. Cotton in 2002, the Supreme Court held under the fourth prong of it does not adversely impair the integrity of the proceedings if there is overwhelming and essentially uncontroverted evidence of the requisite fact. So you're really arguing I can look outside the plea colloquy? Yes. Well, that's what this Court says. I mean, that is not what she suggests. She suggests you're agreeing to be bound by the plea colloquy itself. Right. Well, two things to that, Your Honor. First of all, whatever we say is our concession, this Court isn't bound by the Second, when I read the opening briefing context, I think what my colleague was saying was that for purposes of Apprendi, you have all you need in this colloquy. Let's go back to the colloquy. All right. So now, later on, the judge essentially says what I said he said. Well, it's usually either or, I mean, unless you didn't know what it was. And Ms. Trimble says yes. So he didn't know. He just knew he was importing drugs, but he didn't know he was agreeing to import methamphetamine. And Ms. Trimble says he believed he was importing marijuana. He believed he was agreeing to import marijuana, but it was reasonably foreseeable that the substance would be methamphetamine under the Pinkerton case. If that was what he was agreeing to, is that sufficient? But that wasn't all he agreed to, Your Honor. But that's what Ms. Trimble said. Right. She says that four pages in. When I pointed out what Ms. Trimble said on Excerpt of Records 77 and 78, it didn't seem like you wanted to give as much credence to that. She obviously didn't think it was good enough because she then – and the judge didn't think it was good enough, which is why he challenged her. And then she says it's either or thing, and that's why she now has this other version. And the judge jumped in with his own question directly of the defendant at ER 7879. Correct. But, you know, at some point, too, the judge also – And then he says it was reasonably foreseeable that the substance could be methamphetamine under the Pinkerton case. And that isn't going to do it. Is that right or not? You know, I'm not entirely sure, Your Honor. All I can say is she admitted on behalf of her client that it was marijuana or methamphetamine twice. Ms. Trimble isn't – who's Ms. Trimble? Oh, there she is. Defense counsel. Okay. She admitted on behalf of her client. I see. She admitted it's either or thing. Yes. And then the judge essentially says that isn't going to do it. Well, the judge also says he's not an expert on the issue. I don't know that the judge's characterization six pages – Well, does it do it? So does the case come down to the question of whether you can have an agreement to do either or and whether that's sufficient for the higher sentence? Is that what the case comes down to? No. Then what does it come down to? Because this is plain error of you, too. I think in the first instance, my one argument on one hand is she admitted both, and she can't withdraw that concession for the first time on appeal. All right. Fine. Well, is either of them okay? Is it either adequate for the enhanced sentence that he was part of an agreement but didn't know whether it was either or, or that he was part of an agreement to import marijuana but in the Pinkerton sense was reasonably foreseeable that they were actually going to give him methamphetamine? Is either of those things sufficient? I believe they're – Which one? Well, I think they're both sufficient, Your Honor. In United States v. Banuelos, this Court expressly held that to subject a defendant to increased sentence, you either look to what he exactly agreed to or what was reasonable foreseeable. So I read that as saying if here you want to assume that the stat max was five years for an unspecified amount of marijuana, he's making the exact admission that Banuelos held on harmless error review is required. But this is plain error review, Your Honor. As Judge Smith pointed out, the way I read the defendant's final argument is, you know, we're not saying that it wasn't reasonably foreseeable, he admitted as much. We're saying that there was actually no proof that marijuana was involved. As Judge Smith pointed out, at PSR page 3, the probation officer cites the DEA-7, says it comes back at 94 percent purity, 6.45 kilograms, no objection. Under Federal Rule of Criminal Procedure 32, that's a conclusive fact. In Excerpt of Record 40, the district court expressly finds the 6.485 kilograms was involved with this case. Zero objection from the defense. And then here on appeal for the first time now, there's an argument that, oh, boy, this all violated plain error. The other thing I would point out under the first prong of plain error, an error has to be so obvious that it should have been evident to the district court. The Pinkerton discussion shouldn't have anything to do with this. Is that right? I disagree, Your Honor. Why? Because Panuelos uses that language that it's reasonably foreseeable. No, but the Pinkerton in particular is about the substantive crime. That may be, but I wouldn't say that that makes sense. Well, so the reliance by everybody on Pinkerton was just wrong. Let's say I think that's right. Then I'm going to say the reliance on Panuelos was 100,000 percent correct, where it says in order to subject somebody to a heightened maximum, you look at what they expressly agreed or what they said admitted was reasonably foreseeable. Is this case about what the district court judge thought and counsel for the government and defense counsel thought, or is it about what this defendant admitted on the record? I believe it's a little of both. But what he admits is obviously the more important part, Your Honor. And here I would say he admits that it's marijuana or methamphetamine. And he admits that it's reasonable foreseeable that it was switched. Supposing I think you're wrong. Supposing that I think you're wrong. What is my, what is the thing I might do about it? I would still say affirm, Your Honor. Obviously, I represent. Why? Because of plain error review, which, again, not mentioned a single time by my opponent. The Supreme Court in the United States caught and said under the fourth prong, if there is essentially overwhelming and uncontroverted evidence of an apprendee fact, we don't reverse sentences. In fact, instead of going to impairing the integrity of proceedings, it would be What part of plain error review would I get out on? The seriously affect the fairness, integrity, or public reputation of judicial proceedings? That's the one. I think both. Because that's number four. That's what United States versus Cotton, the Supreme Court in 2002, held in a drug case where an apprentice quantity wasn't alleged, wasn't proven to a jury, was never admitted. They found overwhelming and essentially uncontroverted evidence. But I would also say you could rely on prong three, because that's what this Court did on Bonk in United States versus Buckland. And they frame it, of course, under the prejudice inquiry of prong three. And that's what I wanted to ask you. Supposing I don't agree with you, then what do I do? All right. Thank you. That's all the questions I have. All right. Your time is up. Thank you very much. Thank you. Your Honors, if I may briefly ask you something. Does this case turn under legal question whether the way you articulated at trial the conspiracy agreement in the first place is legally adequate, i.e., whether it is sufficient that he agree to a crime for a conspiracy to either import marijuana or import methamphetamine? What's your answer to whether that's a legally sufficient agreement for purposes of imposing? I don't think it is. And I think Your Honor is absolutely correct that the judge forced us to give a more clear factual basis, which was then legally sufficient. Which was legally sufficient? To sustain the conviction for a conspiracy to import marijuana, yes. But it wasn't sufficient, you're saying, because of the reasonably foreseeable part of it, to sustain a conviction for a conspiracy to import methamphetamine? Exactly, Your Honor. It would only be a matter of fact. But you didn't, again, in your briefs, nobody ever discussed the question of whether the first – I mean, as I understand, the government is arguing that the first version was okay, whatever the judge may have thought. Was it – is there a legal basis for it? Yeah, and I think that may be because counsel here today is different than who wrote the briefs. That was not argued by the government. I do not think that that is sufficient. Tell me why. Do we have a case? Well, Your Honor, in the categorical approach, we've got a lot of cases that are talking about how disjunctive or admissions do not establish the particular substance being admitted to. But more importantly – i.e., I'm indifferent as to whether you do A or B. If I don't care whether you do A or B, I'm agreeing with you that you could do A or B. Is that an agreement to do B as well as A? I think, taken in isolation, it might be. But it's not isolated here. We have much – the magistrate judge had the same concerns that you did about the lack of specificity as to what was in Mr. Howergy's mind, and he got an explicit admission as to which one it was. So I think if that had been the only thing that was said, we would have a different argument here today. But given that we have a more specific factual admission, that's what this Court is bound by. And I do want – And that's to do A and B was reasonably foreseeable. Exactly, Your Honor. But I never agreed to do B, even in the disjunctive. Exactly, Your Honor. And I do want to address plain error. I certainly wasn't avoiding it. The Bucklin case, I think, actually supports me here. The plain error is going above the factual admissions at the change of plea. That, Your Honor, is why I'm saying you just look at the facts at the change of plea. It's to determine whether there's an error that was plain, and that is isolated at looking at the facts that were admitted there. Then when you're turning to whether it affected substantial rights. The second and third prong. The second and third prong, which were addressed in Bucklin. Oh, well, third and fourth. Third and fourth, my apologies as well, Your Honor. In that case, that was a trial case where there was evidence of the actual amount seized from the particular defendant, and there was uncontested evidence about what his co-conspirators had also been responsible for. Either one of those was sufficient to get above the statutory maximum. And keep in mind, also, that case was remanded twice, so a prende was decided while it was on appeal. And so those amounts not being the amounts that came in there, there was no reason to know that you needed that instruction, but nonetheless the amounts themselves were never contested. Let me ask you one last question because you are over your time unless my colleagues have questions. I don't know what she's done with this. Oh, I have a brief moment. Go ahead. Finish. The only thing I would say to briefly conclude that is while Mr. Howergy did not contest amounts here, he did contest whether he was at all connected to those amounts. That was not contested in Bucklin. It was contested here. And, in fact, if you look at the specific test for the fairness, integrity, and public reputation of the court proceedings, you look at whether the evidence was overwhelming and whether it was uncontested. Here there is no dispute, and it's very clear at the sentencing hearing, that Mr. Howergy had a defense to this methamphetamine of withdrawal from the conspiracy and not being a part of any methamphetamine conspiracy. So it absolutely was contested, not whether it existed, but whether it was at all relevant to his personal liability. And so it did affect his substantial rights. And I do understand, Your Honors, that I think the government is making a lot of allusions to me being the person who was in court at that time. I absolutely understand that I missed the statutory maximum. That's why we're on plain error review here. But the travesty that would happen in this case is Mr. Howergy being punished for something that he was not convicted of, only due to the error of his attorney, the judge, and the government attorney in court not understanding the particularities of the conspiracy law. It certainly was agreed between the parties that he would make these admissions for sentencing guidelines purposes so that the government could make their arguments and I could make mine. But at the time of the sentencing, I gather you didn't raise this either at the sentencing? No, Your Honor. And this would be outside the record as well. I can in candor tell you when I realized I had made this error. I moved from the trial unit to the appellate unit. I was asked to keep this appeal. I then brainstormed this at a national seminar about writing appellate briefs. And it then became obvious to me my mistake. Thank you very much. Thank you, Your Honor. Thank you both for your arguments. Sorry. The case is submitted and we will go to United States v. Estrada and Rios.
judges: Berzon, N.R. Smith, Castel